426 So.2d 1336 (1983)
ALLIED CHEMICAL CORPORATION, et al.
v.
IBERVILLE PARISH POLICE JURY, et al.
CIBA-GEIGY CORPORATION
v.
IBERVILLE PARISH POLICE JURY, et al.
COSMAR, INC., et al.
v.
WATERWORKS DISTRICT NO. 2 OF the PARISH OF IBERVILLE, et al.
Nos. 82-C-1360, 82-C-1361 and 82-C-1874.
Supreme Court of Louisiana.
January 21, 1983.
Rehearing Denied March 11, 1983.
Dissenting Opinion March 14, 1983.
*1337 Houston Gascon, III, Dist. Atty., William L. Kimball, Sp. Counsel, Port Allen, J. Hugh Martin, Foley, Judel, Beck, Bewley & Martin, New Orleans, for applicant in Nos. 82-C-1360 and 82-C-1361, respondents in No. 82-C-1874.
Victor A. Sachse, III, Claude F. Reynaud, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for applicant in No. 82-C-1874.
BLANCHE, Justice.
These cases, which were not consolidated by the trial court or the court of appeal, involve the same factual and legal issues and are consolidated by this court for purposes of review. In each of the cases, the plaintiffs brought suit to contest the validity of an ad valorem tax on property located within Iberville Parish Waterworks District Number 2. The trial court sustained the defendants' exceptions of no right and no cause of action in each of the three suits which were filed; the court of appeal upheld the trial court's rulings. We affirm.
The facts alleged in the plaintiffs' petitions are not disputed by the parties. Plaintiffs, Cosmar, Incorporated, American Petrofina, Incorporated, Borg Warner Corporation, Carville Properties, Inc., Allied Chemical Corporation, and Ciba-Geigy Corporation are owners of property within the territorial limits of a special service district, Iberville Parish Waterworks District Number 2. This property owned by the companies in the Waterworks District is also included within the boundaries of an industrial area created by the Iberville Parish Police Jury pursuant to the provisions of La. R.S. 33:130.11, et seq.
On August 19, 1980, the Police Jury of Iberville Parish adopted a resolution. Section one of this resolution authorizes Waterworks District Number 2 to conduct a special election on the following proposition:
"Shall Waterworks District No. 2 of the Parish of Iberville, Louisiana, incur debt and issue bonds to the amount of One Million Five Hundred Thousand Dollars ($1,500,000) to run twenty-five .(25) years from date thereof, with interest at a rate not exceeding nine percentum (9%) per annum, for the purpose of constructing and acquiring improvements to the waterworks system of said Waterworks District, to continue existing waterworks services now provided therein, including additions to the water treatment plant and enlargements of water storage facilities in connection therewith, title to which shall be in the Public, which bonds will be general obligations of said Waterworks District and will be payable from ad valorem taxes to be levied and collected in the manner provided by Article VI, Section 33 of the Constitution of the State of Louisiana of 1974, and statutory authority supplemental thereto?"
The bond proposition was approved by a majority of the voters in the Waterworks District on November 4, 1980.
Section Two of the August 19, 1980 Iberville Parish Police Jury resolution provides that, in the event the said proposition is approved by the electorate, the general obligation bonds are to be secured by the annual levy of an ad valorem tax on "all property" within the corporate limits of Waterworks District Number 2.
*1338 All parties plaintiff maintain in their suits that La.R.S. 33:130.18 prohibits a special service district, such as Waterworks District Number 2, from levying an ad valorem tax on their property which is within an industrial area.[1] Each of the three suits filed seeks declaratory relief from the Iberville Parish Police Jury's resolution that it will tax "all property" in the Waterworks District Number 2.
Allied Chemical Corporation and Ciba-Geigy Corporation pray in their suits, which name Iberville Parish Police Jury and the Board of Commissioners of Iberville Parish Waterworks District No. 2 as defendants, that the Waterworks District Number 2 ad valorem tax be declared illegal for it violates their statutory exemption, La.R.S. 33:130.18. Alternatively, they ask that the tax be declared unconstitutional as violative of due process. In an amended petition, they pray for a declaration that the ad valorem tax only applies to the areas in Waterworks District Number 2 which are not included within an industrial area. Cosmar, Incorporated, Borg Warner Corporation, American Petrofina, Incorporated, and Carville Properties, Inc. brought suit against Waterworks District Number 2 and the Parish of Iberville. They ask that the bond issue supported by the tax be declared illegal, or, alternatively, that their land in the industrial area be declared free from any increased ad valorem taxes.
The defendants responded to each of these actions by filing peremptory exception of no right and no cause of action. Each exception asserts that the plaintiffs had no cause or right of action to bring their suits via ordinaria. The defendants contend that Part XVI, Chapter 32, Title 13 of the Louisiana Revised Statutes of 1950, as amended (R.S. 13:5121 to 13:5130), sets forth the exclusive method for contesting the validity of bonds or the taxes which support those bonds. La.R.S. 13:5121 to 13:5130 requires that the person who desires to contest the issuance of the bonds shall file a "motion for judgment." The court then orders that the motion be published twice within fifteen days and fixes a date for a hearing on the motion. Since the plaintiffs did not file "motions for judgment" within sixty days from the promulgation of the results of the bond election, the defendants argue that La. Const, art. VI, § 35(A) dictates that the plaintiffs' right or cause of action to contest the validity of the bond issue or tax is forever barred.
We have stated that a peremptory exception of no cause of action concedes, for the purposes of its trial, the correctness of the well-pleaded allegations of fact and tenders the issue that on the face of the petition, no case is presented entitling the mover, in law, to the relief sought. Louisiana State Board of Medical Examiners v. England, 252 La. 1000, 215 So.2d 640 (1968); Louisiana Farms Co. v. Yazoo and M.V.R. Co., 172 La. 569, 134 So. 747 (1931). If the petition alleges sufficient facts to establish a case cognizable in law, an exception of no cause of action must fail. Rebman v. Reed, 286 So.2d 341 (La.1973).
Each plaintiff alleges that the Iberville Parish Police Jury has passed a resolution which would levy an ad valorem tax on their tax-exempt property in Waterworks District Number 2. Conceding these facts to be true, we must determine whether the law affords a remedy to the plaintiffs.
Needless to say, the parties disagree as to which remedies are available. The plaintiffs contend that they can seek declaratory *1339 relief through a proceeding via ordinaria by La.R.S. 18:1294.[2] Defendants on the other hand, argue that La. Const. art. 6, § 35(A) together with La.R.S. 13:5121-5130 (The Bond Validation Statute) provide the sole remedy for attacking the validity of bond and the supporting tax. Accordingly, they assert that declaratory relief through a suit via ordinaria is not available to the plaintiffs. The court of appeal, in the cases involving Allied Chemical Corporation[3] and Ciba-Geigy,[4] found that the plaintiffs' exclusive remedy is to proceed under the provision of La.R.S. 47:2110.[5] Since that statute does not provide for declaratory relief as prayed for by the plaintiffs, the court sustained the trial court's ruling that the plaintiffs' petitions failed to state a cause or right of action. In the case involving Cosmar, et al., the court of appeal did not make a finding as to appropriate remedy which the plaintiffs should pursue, but merely held that the plaintiffs did not state a cause of action for they failed to follow the proper procedure set forth in the Bond Validation Statute (La.R.S. 13:5121-5130).[6]
We find that the availability of remedies set forth in La.R.S. 47:2110 and La. R.S. 18:1294 is dependent upon the authority by which the tax is imposed. La.R.S. 47:2110 sets forth the proper method by which the payment of an ad valorem tax may be resisted when the tax is not authorized by an election. That statute applies only when the tax is imposed "... by the state, or any political subdivision thereof under the authority granted to it by the legislature or by the constitution."[7]
La.R.S. 18:1294, on the other hand, is applicable only when the tax is authorized by an election. La.R.S. 18:1294 is included in Chapter 6-A of the Election Code which is titled "Bond, Debt and Tax Elections." The purpose of this chapter is stated in La.R.S. 18:1281 as follows:
The purpose of this Chapter is to implement Article VI, Section 22 of the Louisiana Constitution of 1974 by establishing a uniform procedure for the conduct of elections to authorize the issue of bonds, the assumption of indebtedness, and the imposition or increase of taxes by political subdivisions. The procedure for elections set forth in this Chapter shall apply *1340 to and shall supersede those provisions of the Louisiana Constitution of 1921 which were continued as statues under authority of Part II of Article XIV of the Louisiana Constitution of 1974 and existing laws of the State of Louisiana, notwithstanding any contrary provisions contained therein. However, nothing contained in this Chapter shall repeal the limitations in effect on January 1, 1975 on the authority of political subdivisions to impose or increase taxes.
The ad valorem tax sought to be imposed in Waterworks District Number 2 and which is contested by the plaintiffs in their suits, is not authorized by an election. As stated in La. Const. art. VI, § 33, only the issuance of the general obligation bonds requires approval by the electorate. The ad valorem tax, which secures those bonds, is authorized and mandated by La. Const. art. VI, § 33(B):
(B) Full Faith and Credit. The full faith and credit of a political subdivision is hereby pledged to the payment of general obligation bonds issued by it under this constitution or the statute or proceedings pursuant to which they are issued. The governing authority of the issuing political subdivision shall levy and collect or cause to be levied and collected on all taxable property in the political subdivision ad valorem taxes sufficient to pay principal and interest and redemption premiums, if any, on such bonds as they mature.
Therefore, La.R.S. 47:2110 and not La.R.S. 18:1294 provides the proper remedy for the plaintiffs. The taxes which are contested are authorized by the constitution and not by an election.
Defendants assert that La. Const. art. VI, § 35 together with La.R.S. 13:5121-5130 provides the exclusive remedy to the plaintiffs. However, La.R.S. 13:5121, et seq. is not applicable, for the plaintiffs' actions contest the tax and are not ones "... affecting the validity of bonds of any governmental unit, or the interest thereon, or the sale thereof, or the election, if any, authorizing the issuance of said bonds ..." La.R.S. 13:5122.
Moreover, if we applied the sixty day peremptive period set out in La. Const. art. VI, § 35 to suits contesting the imposition of taxes pursuant to La. Const. art. VI, § 33(B), a person who is illegally taxed by a political subdivision could conceivably lose his right to contest the levying of that tax without notice. La. Const. art. VI, § 35(A) provides:
(A) Contesting Election; Time Limit. For sixty days after promulgation of the result of an election held to incur or assume debt, issue bonds, or levy a tax, any person in interest may contest the legality of the election, the bond issue provided for, or the tax authorized, for any cause. After that time no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond authorization, for any cause whatsoever. If the validity of any election, tax, debt assumption, or bond issue authorized or provided for is not raised within the sixty days, the authority to incur or assume debt, levy the tax, or issue the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have authority to inquire into such matters.
A person who enjoys a statutory exemption from any ad valorem tax may not receive notice that such a tax has been erroneously levied upon his property which he votes on the bond proposition, for La. Const. art. VI, § 33(B) does not require that the bond proposition include the property which will be subject to the underlying ad valorem tax. In fact, by reading La. Const. art. VI, § 33(B), a person who owns tax-exempt property would assume that his property would not be taxed because that provision allows the levy of an ad valorem tax only on "taxable property." If the property to be taxed is not mentioned in the bond proposition, the promulgation of the results of the election also would not provide notice to the person who is improperly taxed. Yet, if we adopt the defendants position, sixty *1341 days from promulgation of the results of the election, that property owner, who has received no notice, is forever barred from contesting the illegal tax. We do not believe that the Framers of our 1974 Louisiana Constitution intended such a result.
We conclude, therefore, that La.R.S. 47:2110 sets forth the plaintiffs' exclusive remedy. To state a cause of action under this provision, the plaintiffs would have to allege that the tax was levied upon them and that they have paid the tax. These facts, however, are not alleged in their petitions. Furthermore, La.R.S. 47:2110 does not permit the declaratory relief sought by the plaintiffs. Consequently, the plaintiffs' petitions fail to state a cause of action.

DECREE
For the foregoing reasons, the judgments of the court of appeal sustaining the exceptions of no cause of action are affirmed. The plaintiffs' exclusive remedy is provided in La.R.S. 47:2110. All costs of these proceedings, here and below, are assessed against the plaintiffs.
DIXON, C.J., concurs in result only, believing Art. VI Sec. 35 & 13:5121-5130 provide plaintiff's exclusive remedy.
LEMMON, J., dissents and will assign reasons.
LEMMON, Justice, dissenting in part.
While I agree generally with the majority opinion, I disagree that payment under protest and suit for a refund is the property owners' exclusive remedy in the present case. I see no reason why a property owner cannot obtain a declaratory judgment pronouncing its tax exempt status, as long as the property owner does not contest the validity of the tax election and the declaratory judgment action does not retard the progress of the taxing authority in levying, assessing and collecting the tax.
The ordinance adopting a resolution to levy a tax on "all property" within the waterworks district was enacted on August 19, 1980. After that date, any owner of property located within that district, who claimed a tax exempt status, should have been entitled to seek a declaration of that status, unless there was no dispute between the property owner and the taxing authority as to the tax exempt status.[1]
Once the tax proposition in this case passed and a dispute developed between the property owners and the taxing authority over the tax exemption, the property owners immediately sought declaratory relief. These suits were met by a plea of peremption, which asserted that the property owners had not timely filed an action under the bond validation statute. The majority properly held that the property owners do not have to use the bond validation statute when they are not attacking the validity of the election, but rather are merely questioning whether the tax imposed by valid election is applicable to their respective properties.
While I agree with the majority that the property owners could wait until the taxes were assessed on the particular properties and then pay under protest and file a suit to recover the tax, I disagree that the property owners are obliged to do so. La.C.C.P. Art. 1872 provides that a declaratory judgment action is available to contest the validity or the applicability of an ordinance, and there is no reason why such an action cannot be used in the present case, as long as the property owner does not attempt to impede the assessment or the collection of the tax.[2]
NOTES
[1] La.R.S. 33:130.18 states:

When an industrial area shall be created including territory which is a part of a pre-existing special service district which furnishes any of the services enumerated in R.S. 33:130.15, such territory shall continue to be subject to taxes of the special service district which had previously been levied. No new tax levied by any such special service district shall apply to any territory within an industrial area unless such tax is a renewal or extension of previously existing tax, the proceeds of which are to be used to continue an existing service. No increase of an existing tax levied by any such special service district shall apply to any territory within an industrial area unless, because of increased maintenance or other costs, such increase is necessary to continue to provide an existing service.
[2] La.R.S. 18:1294 provides:

For sixty days after promulgation of the results of an election held under this Chapter to incur debt, issue bonds, levy or increase a tax or assume debt, any person in interest may contest the legality of the election, the bond issue provided for, the tax authorized, or the assumption of indebtedness for any cause. After that time no one shall have any cause or right of action to contest the regularity, formality, or legality of the election, tax provisions, or bond authorization, for any cause whatsoever. If the validity of any election, tax, debt assumption, or bond issue authorized or provided for is not raised within the sixty days, the authority to incur or assume debt, levy the tax, or issue the bonds, the legality thereof, and the taxes and other revenues necessary to pay the same shall be conclusively presumed to be valid, and no court shall have the authority to inquire into such matters.
[3] 414 So.2d 409 (La.App. 1st Cir.1982).
[4] 414 So.2d 412 (La.App. 1st Cir.1982).
[5] La.R.S. 47:2110 provides in pertinent part as follows:

A. No court of this state shall issue any process whatsoever to restrain the collection of an ad valorem tax imposed by the state, or by any political subdivision thereof, under authority granted to it by the legislature or by the constitution. Any person resisting the payment of any amount of tax found due, or the enforcement of any provision of the tax laws in relation thereto, shall pay the amount found due to the officer designated by law for the collection of such tax and shall give the officer notice at the time of payment of his intention to file suit for the recovery of such tax. Upon receipt of such notice, the amount so paid shall be segregated and held by the officer for a period of thirty days. If suit is filed within such time for the recovery of the tax, such amount so segregated shall be further held pending the outcome of the suit. If the taxpayer prevails, the officer shall refund the amount to the taxpayer with interest at the rate of two per centum per annum for the period from the date such funds were received by the officer to the date of such refund.
[6] 414 So.2d 819 (La.App. 1st Cir.1982).
[7] For examples of ad valorem taxes which are authorized by statute as opposed to an election, see La. Const. art. 6, § 26 (Parish Tax for General Purposes) and La. Const. art. 6, § 27 (Municipal Tax for General Purposes).
[1] Arguably, the declaratory judgment action may be premature until the proposition passes in the election.
[2] The declaratory judgment action may well be beneficial to the taxing authority. If the industrial property (which is claimed to be tax exempt) comprises a substantial percentage of the total assessed value of all property within the waterworks district, then it would probably be beneficial to the taxing authority that any declaration be made early (if the industrial property is determined to be exempt), since it is unlikely that the tax will be assessed on the remaining property at millage rates much higher than originally anticipated.