517 So.2d 192 (1987)
Otis CAMPBELL, et al.
v.
ST. TAMMANY PARISH POLICE JURY, et al.
No. 87 CA 0476.
Court of Appeal of Louisiana, First Circuit.
November 10, 1987.
Rehearing Denied January 19, 1988.
Writ Denied February 26, 1988.
*193 Patrick J. Berrigan, Slidell, Normand F. Pizza, New Orleans, Elaine W. Guillot, Slidell, for plaintiffs-appellants.
Ronald Guth, Slidell, for intervenors-appellants.
Julian J. Rodrigue, Jr., Covington, for defendants-appellees.
Michael R. Fontham, Denise M. Pilie, New Orleans, for other appellees.
Before COVINGTON, C.J., and SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
This is an appeal by Otis Campbell, David Squires, individually and as Tax Collector for the City of Slidell, Northshore Limited Partnership, Herman P. Waschka, Ted and Mary Burhenn, Edward B. Denechaud, and the City of Slidell (plaintiffs) and intervenors Town of Pearl River, Louisiana (Town), Donna Crawford Karchner, Richard G. Karchner, Ruby Mae Pettit Crawford, and Arnold K. Crawford who allege varied flawsboth procedural and substantivewith the St. Tammany Parish Police Jury's creation of Sales Tax District Number 3 (District); with the District's electoral approval of a District-wide 2% sales tax; and with the application of the tax.[1]
*194 The trial court's findings are summarized as follows: On July 17, 1986, the St. Tammany Parish Police Jury (Police Jury) by unanimous vote suspended its rules of order to enact an ordinance creating the District from all territory not within then existing corporate boundaries; the Police Jury published the ordinance in its official journal on August 3, 1986; thereafter, on August 21, the Police Jury adopted a resolution setting forth a proposition authorizing a 2% sales tax to be used to fund bonds for the purpose of road improvement, to be put before the electorate on November 4, 1986. An ordinance was then introduced designating in terms of priority the roads to be improved from the proceeds of the sales-tax-funded bond issue. The District-wide election was held as scheduled resulting in the approval of the tax package. On November 20, a resolution canvassing the returns and declaring the result was adopted and, again by unanimous vote, the Police Jury suspended its regular rules of order to immediately adopt an ordinance levying the tax.
With these findings and a judgment adverse to them, plaintiffs specify error as follows:
I. The Trial Court erred in not finding that the due process rights of the Appellants were violated by the actions of the Police Jury in the creation of the District and the imposition of the sales tax.
II. The Trial Court erred in not finding that the equal protection rights of Appellants were violated by the actions of the Police Jury.
III. The Trial Court erred in finding that the Police Jury had authority to call the election and that the election was not null and void due to the lack of authority of the Police Jury's call of the election and the denial by the Police Jury of the right to vote to citizens of municipalities.
IV. The trial court erred in finding that issues as to the composition of the District and the uniform levy and collection of the tax were not before the Court.
Intervenors specify error in the trial court's finding that the Police Jury's actions comport with due process.
Plaintiffs are municipal residents and not members of the district created. They assert that the creation of the District without adequate notice to the parish residents violated their right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution and the Louisiana Constitution, Article 1, Section 2. In Corbello v. Sutton, 442 So.2d 610 (La. App. 1st Cir.1983), aff'd, 446 So.2d 301 (La.1984), this court recognized, again, the fundamental precept that an initial requirement of any due process claim is the existence of a liberty or property interest adversely affected. A threshold requirement of a due process claim under the Fourteenth Amendment, likewise, is the existence of such interest. O'Bannon v. Town Court Nursing Center, 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980). The trial court determined that plaintiffs lacked the requisite interest to have been adversely affected by the creation of the District excluding municipal residents for the purpose of self-imposed taxation of the District residents. We agree. The obligation to pay taxes is concomitant with the many benefits of membership in a civilized society. A right to be taxed may not be. Plaintiffs have asserted, at most, that a "right to annex" was impinged because the creation of the district resulted in the passing of the tax, thereby discouraging annexation. There is no constitutionally-guaranteed right to annex. Kel-Kan Investment Corporation v. Village of Greenwood, 428 So.2d 401 (La.1983). Annexation is arguably a specie of property interest, but such interest would belong to the members of the Districtthe electorate who authorized the tax now complained of. Moreover, there is no constitutional requirement that a legislative body poll its electorate or otherwise entertain their views before performing its legislative function. See Bi-Metallic Investment Company v. State Board of Equalization, 239 U.S. 441, 36 S.Ct. 141, 60 L.Ed. 372 (1915).
In connection with their second specification of error, plaintiffs assert that the creation of the district to the exclusion *195 of municipal residents,[2] disqualifying these persons from the District electorate, violates the equal protection clause of the Fourteenth Amendment. The District was created and its election conducted pursuant to the provisions of LSA-R.S. 33:2721.6. In Holt Civic Club v. City of Tuscaloosa, 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978), an Alabama statutory scheme provided extra-territorial municipal powers throughout a three-mile circumscription of each municipality without allowing the non-municipal residents participation in municipal elections. The court rejected an equal protection challenge to the statute, distinguishing Cipriano v. City of Houma, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (which upheld a challenge to a Louisiana statute limiting to property owners the right to vote in elections for the approval of revenue bonds) and Kramer v. Union Free School District, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (which invalidated similar qualifications upon the electorate of school district residents), noting that successful voting qualifications cases involve a statute that limits the electorate of a governmental entity to certain members of its public:
No decision of this Court has extended the "one man, one vote" principle to individuals residing beyond the geographic confines of the governmental entity concerned, be it the State or its political subdivisions.
439 U.S. at 68, 99 S.Ct. at 389. Sales Tax District Number 3 of St. Tammany Parish is a political subdivision. LSA-R.S. 18:1282. We reject the argument that equal protection was denied municipal residents of St. Tammany Parish.
The constitutionality of LSA-R.S. 33:2721.6 having been implicitly challenged, we note that this special service district statute was enacted as a response to a similar problem the State of Alabama attempted to redress by the police jurisdiction statute attacked in Holt.[3] Louisiana's solution to the problem of servicing populated unincorporated areas[4] respects the autonomy of the particular area and is certainly as reasonable an exercise of the powers of Louisiana to pursue legitimate state purposes[5] as the Alabama statute at issue in Holt. The judiciary does not act as a super-legislature to determine whether elected officials have chosen the most practical solutions to the many problems with which they must contend.[6]
Plaintiffs specify as error, thirdly, the trial court's determination that the police jury possessed the authority to call the sales tax election. We note that defendants excepted to plaintiffs' use of the Bond Validation Statute, LSA-R.S. 13:5121 through 13:5130, asserting that the proper procedure for a challenge of the sales tax election is prescribed by the Election Code, Title 18 of the Louisiana Revised Statutes. The trial court held otherwise, in an interlocutory ruling dated February 24, 1987, concluding that the posture of the facts at *196 bar provoke a conflict between Title 18 (more specifically LSA-R.S. 18:1281 through 18:1295) and the Bond Validation Statute (LSA-R.S. 13:5121 through 13:5130), and, determining that the latter scheme is "more specifically directed to the matter," overruled the exceptions. The course of the trial and resulting findings of fact, however, are not consistent with the standard for invalidation found at LSA-R.S. 13:5130, which reads in part:
No court ... shall invalidate the bonds unless it finds substantial defects, material errors and omissions in the incidents of such bond issue.
The trial court, instead, applied invalidation provisions of the Election Code, and concluded that "irregularities or fraud" within the meaning of LSA-R.S. 13:1401(C) were not shown and that, because denial of the franchise to municipal residents was statutorily mandated (See LSA-R.S. 33:2721.6(A)(1)) and constitutionally permissible, "qualified voters" within the meaning of LSA-R.S. 18:1432 were not excluded. Moreover, there was no evidence that the result would have differed but for these alleged violations. This finding is supported by the record. We believe that these proceedings should have been brought pursuant to Title 18.
The operative language of the Bond Validation Statute is found at LSA-R.S. 13:5122, which reads in part:
All suits, actions and proceedings of whatever nature affecting the validity of bonds of any governmental unit, or the interest thereon, or the sale thereof, or the election, if any, authorizing the issuance of said bonds shall be brought only in accordance with the provisions of this Title.
(Emphasis ours.) In Cosmar, Inc. v. Waterworks District No. 2 of the Parish of Iberville, 414 So.2d 819 (La.App. 1st Cir. 1982), aff'd sub nom., 426 So.2d 1336 (La. 1983), this court determined that a suit contesting the application of an ad valorem tax dedicated to fund a bond issue was not properly brought under the Election Code but, rather, should have been brought under the provisions of LSA-R.S. 13:5121 through 13:5130. The suit was consolidated by the Supreme Court with other proceedings contesting the application of the ad valorem tax. The result was affirmed, but on the basis that LSA-R.S. 47:2110 provides the proper remedy for contesting an ad valorem tax. More important than the question of current viability of that aspect of Cosmar is that the instant facts are distinguishable. The proposition at issue here requests authorization of the sales tax and authorization "to fund the proceeds of the Tax into bonds to be issued in series from time to time."[7] LSA-R.S. 39:698.2 requires that authorization for a sales tax and authorization for the funding of such tax be granted by the electorate of the particular political subdivision involved. LSA-R.S. 39:698.3 provides that upon such authorization, the governing authority of the political subdivision "may issue bonds from time to time for the purpose or purposes set forth in the question or proposition approved at the election ..." (Emphasis ours.) Proposition that was at issue in Cosmar reads in part:
"Shall Waterworks District No. 2 of the Parish of Iberville, Louisiana, incur debt and issue bonds to the amount of One Million Five Hundred Thousand Dollars ($1,500,000), to run twenty-five (25) years from date thereof, with interest at a rate not exceeding nine per centum (9%) per annum, ..."
(Emphasis added.) 414 So.2d at 820. Clearly, the proposition above requests authorization for the issuance of particular bonds rather than the authority to spend sales tax revenues in a particular manner as did the St. Tammany sales tax proposition.[8] For this reason we find Cosmar inapposite.
Lastly, as regards the issue of authority to call the election, we note that the statute providing for the creation of a sales tax district provides that the governing authority of such district is the parish police jury.
*197 LSA-R.S. 33:2721.6(C)(3). The trial court determined that the Police Jury conducted both its regular business and the business of the district at its regularly scheduled meetings, refusing to hold that its authority as the governing body of the district was not properly exercised because of a special meeting for the conduct of district business was not held. We agree. LSA-R.S. 33:2721.6 does not require a separate meeting for district business. Plaintiffs articulated no reason why such requirement should be judicially imposed.
Plaintiffs' fourth and final specification of error addresses the trial court's having pretermitted ruling on their assertion that imposition of the district tax on properties later annexed by the City of Slidell will exceed the maximum allowed by LSA-R.S. 33:2721.6(A)(2) and will fail to conform to the uniformity of the collection requirement of LSA-R.S. 33:2721.6(D)(4). In addressing that two-fold argument the trial court held:
Any disputes involving the boundaries of the District after it was initially created are a result of the municipalities' actions in annexing the properties and were thus beyond the control of the Police Jury. If there are indeed such questions, they should be resolved between the owners of the disputed property and the Police Jury as governing authority of the District. These individual suits would be the proper subject of other legal actions within the province of the courts.
Plaintiffs assert that the owners of property annexed by Slidell after the creation of the District are parties to the litigation as is the Police Jury in its capacity as the governing authority of the District. We agree. However, Northshore Limited Corporation, the one plaintiff owning property within the district that was annexed by Slidell prior to the tax proposal was passed, has yet to develop the property. Plaintiffs produced no evidence that District taxes and municipal taxes are now being collected in violation of LSA-R.S. 33:2721.6(A)(2) or that the District tax is not presently being collected uniformly as required by LSA-R.S. 33:2721.6(D)(4). Our Code of Civil Procedure recognizes the availability of declaratory relief. LSA-C.C.P. art. 1872. Nevertheless, there must exist a concrete, justiciable controversy framing the facts in order to avoid the rendering of an advisory opinion. Stoddard v. City of New Orleans, 246 La. 417, 165 So.2d 9 (1964); Rambin v. Caddo Parish Police Jury, 316 So.2d 499 (La.App. 2d Cir.1975). Any opinion as to which of the two sales taxes should be collected in the event sales are made or services performed in the area that comprises both the District and a municipality, or as to the effect this may have on District compliance with the uniform collection requirement cited above would violate this basic tenet, and we decline to do so.
For the reasons expressed hereinabove, the judgment of the trial court is affirmed, with costs assessed to plaintiffs.
AFFIRMED.
NOTES
[1] The trial court in its reasons for judgment framed the issues similarly:

Plaintiffs' arguments can be grouped into three categories: those concerning the creation of the District, those involving the election, and those relative to the composition of the District. The Court will examine each of these in turn and then consider Intervenor's argument.
Our grouping encompasses the contentions of both plaintiffs and intervenors inasmuch as all demand similar relief. See LSA-C.C.P. art. 1091(1).
[2] The creation of a "special district" such as the District involved at bar is authorized by LSA-R.S. 33:2721.6, which provides at paragraph C(1):

Any special district or districts so created may contain all or any portion of the territory contained within the boundaries of the parish or the school board which created it.
That statute provides further, at paragraph E, that the imposition of a sales and use tax must be authorized by the qualified electors of the special district.
[3] That problem being providing services to populous unincorporated areas of state political subdivisions. We note that in Holt the residents affected by Alabama's police jurisdiction statute suggested several "constitutionally preferable" alternatives to the statute. One such alternative was "exclusive management of the police jurisdiction by county officials," an alternative which is similar to the scheme set forth in LSA-R.S. 33:2721.6.
[4] There was abundant testimony regarding the poor condition of the rural roads to which the funds from the tax package have been dedicated. In fact, Otis Campbell, lead-name plaintiff in these proceedings, voted as a member of the St. Tammany School Board to prohibit school buses from using certain of these roads in disrepair.
[5] San Antonio Independent School District v. Rodriguez. 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).
[6] See Holt, 439 U.S. at 73-74, 99 S.Ct. at 391-392.
[7] See Plaintiffs' Exhibit 8, St. Tammany Parish Police Jury Resolution 86-2578.
[8] Id.