# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


**25-438 consolidated with 25-317**


**DANNY DEMOUCHET, ET AL.**

**VERSUS**

**NEXION HEALTH MANAGEMENT, INC., ET AL.**

**consolidated with**

**DANNY DEMOUCHET, SURVIVING SPOUSE OF BETTY DEMOUCHET**

**VERSUS**

**NEXION HEALTH MANAGEMENT, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NUMBER 140662
HONORABLE CURTIS SIGUR, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**LEDRICKA J. THIERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Shannon J. Gremillion, Ledricka J. Thierry, and Clayton Davis, Judges.


**REVERSED AND REMANDED.**

Matthew M. Coman
Jordan M. Jeansonne
Garcia & Artigliere
400 Poydras Tower
400 Poydras Street, Suite 2045
New Orleans, LA 70130
(504) 354-9750
COUNSEL FOR PLAINTIFFS/APPLICANTS/APPELLANTS:
    Danny Demouchet, et al.

Ann Marie LeBlanc
Kathryn M. Caraway
Mary Margaret H. Moore
Caraway LeBlanc, L.L.C.
3936 Bienville Street
New Orleans, LA 70119
(504) 566-1912
COUNSEL FOR DEFENDANTS/RESPONDENTS/APPELLEES:
    Nexion Health Management, Inc., Nexion Health at New Iberia Manor
    South, Inc., d/b/a New Iberia Manor South

**THIERRY, Judge.**

In this consolidated appeal and writ application, Plaintiffs, Danny Demouchet and his children, Lamanda Segura, Joseph Demouchet, and Debryson Demouchet, appeal the trial court's judgment sustaining exceptions of prematurity and exceptions of no cause of action to Plaintiffs' intentional fraud and administrative negligence claims in favor of Defendants, Nexion Health Management, Inc., Nexion Health at New Iberia Manor South, Inc., d/b/a New Iberia Manor South, and Kevin Doerr.[1] Finding the trial court erred in granting the exceptions, we reverse the judgment of the trial court and remand the case for further proceedings.

***Facts and Procedural History***

On June 29, 2022, Betty Demouchet was admitted to New Iberia Manor South (NIMS), a nursing home. Plaintiffs allege in their First Amending Petition that at the time of her admission to the facility, Mrs. Demouchet had self-care deficits which increased her risk of developing pressure ulcers and infections and required special treatment of oxygen therapy. Plaintiffs further allege she required extensive assistance with daily activities, including "bed mobility, toileting and bathing."

Plaintiffs maintain that NIMS failed to provide Mrs. Demouchet with appropriate care and services consistent with professional standards of practice to prevent her from developing pressure ulcers such as one in her coccyx/sacrum area in early 2023. Plaintiffs alleged NIMS failed to notify Mrs. Demouchet's family of this pressure ulcer. After it developed, Plaintiffs alleged NIMS failed to ensure that Mrs. Demouchet received necessary treatment and services consistent with necessary standards and practice to promote healing, prevent infection, and prevent new pressure ulcers. These failures included failing to turn and reposition Mrs.

---

[1]     Neither the writ application nor the appeal contest the dismissal of Kevin Doerr.

Demouchet with the requisite frequency and failing to timely monitor and clean her after episodes of incontinence. It was maintained due to these alleged failures, the pressure ulcer deteriorated.

Further allegations included that NIMS provided substandard care and faulty oxygen detecting equipment which led to Mrs. Demouchet being hospitalized for breathing problems. It was further alleged that EMTs had to exchange NIMS's oxygen concentrator for one of their own. Further, it was alleged that due to improper supervision by facility staff, Mrs. Demouchet aspirated on her own vomit when she expelled into her CPAP mask. Plaintiffs also maintained when Ms. Demouchet coded on May 1, 2023, NIMS's monitoring equipment did not work. She was revived after being transported to the hospital. Danny Demouchet made several complaints about the level of care and supervision his wife was receiving while at NIMS. It was asserted these lapses of the standard of care caused injuries to Mrs. Demouchet and contributed to her ultimate death on June 15, 2023.

On May 22, 2023, Mrs. Demouchet filed a Request for a Medical Review Panel against NIMS. On June 27, 2023, Mr. Demouchet filed an amended medical malpractice claim, which alleged that Mrs. Demouchet's death was in part caused by complications from the pressure ulcer she developed at NIMS. According to the amended claim, the ulcer was avoidable, occurred due to the substandard care given at NIMS, hastened her demise, and substantially contributed to her death.

On June 27, 2023, Mr. Demouchet also filed a Petition for Damages alleging certain acts against NIMS, Nexion Health Management, Inc. (hereafter NHMI), and Kevin Doerr, the then administrator at NIMS. The petition alleged NIMS is a skilled nursing facility in New Iberia. Mr. Doerr was the administrator responsible for the general administration of the facility. NHMI was the management company with operational control of NIMS and was vicariously liable for the actions of its

2

employees and facility. The petition alleged facts similar to those contained in the medical malpractice complaint. It also made "administrative negligence" allegations against NHMI and Doerr of intentional underfunding that led to NIMS being understaffed. Lastly, it alleged intentional fraud against all defendants based on misrepresentations about the services to be provided to Mrs. Demouchet at NIMS. On July 14, 2023, the petition was amended to add Mrs. Demouchet's children as plaintiffs.

On July 9, 2024, the MRP rendered its opinion and found no evidence that NIMS deviated from the applicable standard of care. Despite the MRP ruling, Plaintiffs filed a First Amended Petition for Damages, which largely restated the prior assertions of medical negligence on the part of NIMS and the administrative negligence allegations against NHMI. Both NIMS and NHMI filed an Exception of Prematurity arguing that the fraud allegations were essentially medical malpractice allegations in disguise and Plaintiffs had not properly pled an intentional tort as required by *Bazley v. Tortorich*, 397 So.2d 475 (La.1981) and its progeny. NHMI also excepted to the administrative negligence allegations, arguing it was a qualified health care provider and the allegations sounded in medical negligence. Thus, the claim fell within the scope of the Louisiana Medical Malpractice Act (LMMA), La.R.S. 40:1231, *et seq.*, and was premature.

NIMS and NHMI also filed an Exception of No Cause of Action, arguing that the fraud claims were based on the Nursing Home Resident's Bill of Rights (NHRBR), which no longer allows damages but only provides for injunctive relief. In addition, NHMI argued the administrative negligence claims were based on federal regulations and did not define the standard of care. As such, those claims should also be dismissed.

3

After a hearing on the exceptions, the trial court asked for post-hearing memos from the parties. After the hearing, but before the post-hearing memos were received, this court issued its ruling in *Riley v. Paramount Healthcare Consultants, LLC*, 24-127 (La.App. 3 Cir. 10/30/24), 396 So.3d 470, which addressed similar claims against a nursing home and its management company.[2] Even though the trial court received written argument from both sides as to the applicability of *Riley*, it did not reference the case in its written reasons for judgment.

The trial court's Reasons for Judgment and the judgment itself sustained both exceptions and dismissed all of Plaintiffs' allegations without prejudice. The trial court stated:

## INTENTIONAL/FRAUDULENT MISREPRESENTATION AND CONTRACTUAL FRAUD

The Court finds that Cambre, Satterwhite, and Cole are controlling and indistinguishable for the intentional tort theories as alleged by the DEMOUCHETS. In *Cambre*, the court expressly held that "plaintiffs cannot rely on the NHRBR to establish the duty element for a claim to damages under Louisiana Civil Code article 2315, because the scope of the duty established by the legislature does not encompass the recovery of damages based on the value of services provided but not delivered." Cambre, 24-218, p. 7 (La. App. 5 Cir. 8/7/24) 2024 WL 3683514, p. 8. Also, in Cole, the court expressly held that, "[t]he legislature, by its 2003 amendment to La. R.S. 40:2010.9 has limited the claims under the NHRBR to that of injunctive relief by a pursuing home resident. The exclusive remedy since the amendment of the statute is injunctive relief, plus attorney fees and cost…consequently, we find plaintiff's second amended petition fails to state a cause of action for contractual fraud under La. C.C. art. 1953." Cole, 24-148, p. 4 (La. App. 5 Cir. 8/7/24) 2024 WL 3682982, pp. 7-8 (internal citations omitted).

The Court further finds that the DEMOUCHETS have failed to sufficiently allege that Mrs. Demouchet suffered any actual damages caused by the alleged intentional/fraudulent misrepresentation or contractual fraud. Again, the DEMOUCHETS claim for damages, whether pecuniary or physical, are predicated on the NHRBR which does not allow for recovery of any type of damages. Finally, the Court does not find the existence of any fiduciary duty owed to Mrs. Demouchet by the nursing home. The Court grants NEXION'S

---

[2] The *Riley* opinion will be discussed in detail later in the opinion.

4

Peremptory Exception of No Cause of Action for Intentional/Fraudulent Misrepresentation and Contractual Fraud without prejudice.

## ADMIMNISTRATIVE NEGLIGENCE

The Court finds that the regulations from the Code of Federal Regulation (CFR), the Louisiana Administrative Code, and the U.S. Code do not supply the "duty" element of their claim for "administrative negligence" under Louisiana tort law for administrative negligence in the health care setting. This duty is supplied under the Medical Malpractice Act. The Court notes the DEMOUCHETS' petition fails to set forth a cause of action for administrative negligence nor does it set forth sufficient facts to support a claim for actual damages suffered or the specific type of harm suffered by Mrs. Demouchet. Therefore, the Court grants NEXION's Peremptory Exception of No Cause of Action on Administrative Negligence without prejudice.

## DILATORY EXCEPTION OF PREMATURITY

The Court finds the DEMOUCHETS['] claim for intentional fraud and intentional misconduct are premature and are claims for medical malpractice. The Medical Review Panel has not addressed what the DEMOUCHETS listed in their Amended Petition concerning intentional fraud and intentional misconduct. Because of this, such claims are deemed premature, allowing for Defendants' Dilatory Exception for Prematurity to be granted.

Initially, we note the trial court's Reasons for Judgment refers to all named defendants as "Nexion" despite Plaintiffs' separate claims against each defendant. Also, Defendants submitted a proposed judgment asking the trial court to convert its ruling on the Exception of No Cause of Action to a dismissal with prejudice because Plaintiffs never moved for leave to file their amended complaint. However, the final judgment signed April 29, 2025, maintained the dismissal of all of Plaintiffs' claims without prejudice.

Plaintiffs appealed the rulings involving NHMI. They argued the trial court erred when it sustained the exceptions of prematurity and no cause of action as to their intentional fraud and administrative negligence claims. Plaintiffs filed an application for supervisory writ seeking review of the trial court's sustaining of

5

NIMS's exceptions of prematurity and no cause of action that dismissed their intentional fraud claim. NHMI and NIMS filed an Answer to the Appeal, requesting that the trial court's judgment as to the Exception of No Cause of Action be converted to a judgment of dismissal with prejudice.

This court granted the writ application for the limited purpose of consolidating the writ application and the appeal. Therefore, we will address all assignments of error in this opinion.

***Law Applicable to the Exceptions of Prematurity***

Louisiana Code of Civil Procedure Article 926(A)(1) provides for the exception of prematurity, which questions whether the cause of action has matured to the point where it is ripe for judicial determination. *Kelleher v. University Med. Ctr. Mgmt. Corp.*, 21-11 (La. 12/10/21), 332 So.3d 654. The exception of prematurity dismisses a medical malpractice claim against a qualified health care provider "if such claim has not first been reviewed by a pre-suit medical review panel" as required by La.R.S. 40:1231.8. *Kelleher*, 332 So.3d at 657. The exceptor must demonstrate that he or she "is entitled to a medical review panel because the allegations fall within the scope of the [Louisiana Medical Malpractice] Act." *Id.* For the LMMA to apply, (1) the party must be a qualified health care provider, and (2) the claim must sound in medical malpractice. *Dupuy v. NMC Operating Co., L.L.C.*, 15-1754 (La. 3/15/16), 187 So.3d 436. "Whether a claim sounds in medical malpractice is a question of law reviewed under a *de novo* standard." *Thomas v. Reg'l Health Sys. of Acadiana, LLC*, 19-507, p. 8 (La. 1/29/20), 347 So.3d 595, 601; *Hernandez v. Diversified Healthcare-Abbeville, LLC*, 09-546 (La.App. 3 Cir. 11/4/09), 24 So.3d 284, *writ denied*, 09-2629 (La. 2/12/10), 27 So.3d 849.

The Louisiana Supreme Court in *Coleman v. Deno*, 01-1517, 01-1519, 01-1521 (La. 1/25/02), 813 So.2d 303, set forth six factors to determine whether certain

6

conduct by a qualified health care provider constitutes "malpractice" as defined under the LMMA: (1) whether the particular wrong is "treatment related" or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional.

### *Exceptions of Prematurity as to Plaintiffs' Intentional Fraud Claim*

Paramount in the discussion of the trial court's sustaining of both NHMI's and NIMS's exceptions of prematurity as to Plaintiffs' intentional fraud claim is this court's ruling in *Riley*, 396 So.3d 470, which the trial court did not consider in its Reasons for Judgment. Both parties did refer and discuss *Riley* in their post-hearing memoranda; however, there was no discussion below at the hearing. We find our decision in *Riley* controlling in this case.

In that case, Lloyd and Timothy Riley filed a lawsuit against Paramount Healthcare Consultants, LLC, and Cornerstone at the Ranch, a skilled nursing home facility, where their mother, Faye Riley, resided. Similarly to the Plaintiffs in this case, the Rileys alleged that the nursing home and management company committed fraud when it made knowing and intentional misrepresentations at the time it admitted Mrs. Riley as a patient by maintaining it had adequate nursing staff and sufficient services to meet her needs as mandated by state and federal law. The plaintiffs relied on those representations when they chose that nursing home. It was specifically alleged these representations were falsely made as the nursing home and management company knew it was understaffed and could not provide the level of

7

care promised. And, again, similar to here, the Rileys alleged these deliberate fraudulent actions resulted in physical harm to Mrs. Riley.

In examining whether the plaintiffs in *Riley* sufficiently pled an intentional tort, this court concluded:

> "To sufficiently plead an intentional tort in the context of medical malpractice, the petition must contain specific facts sufficient to establish the medical provider consciously desired the physical result of his acts or knew the result was substantially certain to follow from [its] conduct." *Doe v. Banks*, 23-914, p. 7 (La.App. 1 Cir. 3/13/24), 385 So.3d 706, 710-11; *Hebert v. Louisiana Med. Mut. Ins. Co.*, 22-316 (La.App. 3 Cir. 10/26/22), 353 So.3d 846. "[S]omething more than a conclusory allegation of intentional conduct is required." *Self v. Willis-Knighton Med. Ctr.*, 55,130, p. 11 (La.App. 2 Cir. 8/9/23), 369 So.3d 455, 461.

> In their petition alleging fraud, the Rileys claim that Cornerstone informed Ms. Riley in writing at the time of her admission that it would provide adequate and appropriate health care and protective and support services, which Cornerstone knew it could not provide. The Rileys claim that these intentional misrepresentations resulted in bodily injuries and death by the following actions or inactions:

> a) failing to have sufficient qualified personnel to properly operate the nursing facility to assure the health, safety, proper care and treatment of Ms. Riley as required by La.Admin. Code. [sic] tit. 48 § I-9757, *et seq.* and 42 C.F.R. § 483.35, *et seq.*;
>
> b) failing to properly assess, re-assess [a] care plan for Ms. Riley's self-care deficits, risk of falls, risks of developing pressure ulcers and infections, having actually developed pressure ulcers to her body, and her risk of dehydration and malnutrition, as required by La.Admin. Code. [sic] tit. 480 §§ I-9763*, et seq.* and I-9825(A) and 42 C.F.R. § 483.25, *et seq.*.;
>
> c) failing to have sufficient nursing staff to provide nursing and related services that met the needs of Ms. Riley as required by La. Admin. Code. [sic] tit. 48 § I-9821(A) and 42 C.F.R. § 483.35, *et seq.*;
>
> d) failing to provide a sufficient number of nursing service personnel consisting of registered nurses, licensed practical nurses, medication attendants certified, and certified nurse aides to provide nursing care to Ms. Riley in accordance with her care plans 24 hours per day as required by La.Admin. Code. [sic] tit. 48 § I-9823(A)*, et seq.* and 42 C.F.R. § § 483.25, *et seq.* and 483.35, *et seq.*;

e) failing to ensure Ms. Riley received personal attention and nursing care and services in accordance with her condition and consistent with current acceptable standards of nursing practice as required by La. Admin. Code. [sic] tit. § I-9825(A), and 42 C.F.R. § § 483.25, *et seq.* and 483.35, *et seq.*;

f) failing to provide nursing care and services to Ms. Riley[] as needed to prevent her from suffering preventable falls, developing avoidable pressure ulcers and suffering from dehydration, malnutrition and sepsis, as required by La.Admin. Code. [sic] tit. 48 § I-9825, et seq. and 42 C.F.R. §483.25, et seq.; and

g) failing to promptly notify Ms. Riley's legal representative, sponsor or designated contact when there was a significant change in Ms. Riley's physical status as required by La. Admin. Code. [sic] tit. 48 § I-9825(H).

This court in *Hernandez* discussed an adequate staffing issue at a nursing home. In considering the factors in *Coleman*, 813 So.2d 303, this court noted that:

> There can be no way to assess the fault of the nursing home without reference to Alvin's extensive medical and pharmacological needs and the care and treatment that was rendered to him by the staff. The level of supervision and monitoring required by a patient necessarily requires an assessment of his medical condition and capabilities.

*Hernandez*, 24 So.3d at 287. However, the court also observed "**there are no allegations that the conduct complained of was intentional**." *Id*. at 289 (emphasis provided).

The Rileys have made specific claims of intentional misrepresentations by the nursing home that it had the staff to care for her specific needs when it knew it could not provide the necessary care that her circumstances required. They have alleged that these misrepresentations resulted in injuries and death to Ms. Riley because the nursing home knowingly could not provide the appropriate health care, protective, and support services. We find that these allegations are sufficient to support a claim that an intentional tort occurred, and the trial court erred in granting the exception of prematurity in favor of Cornerstone.

*Id.* at 477-479.

Contrary to Defendants' assertion, we find that *Riley* is factually similar to the present case. Plaintiffs assert claims nearly identical to those in *Riley*. Plaintiffs' first amending petition alleged intentional misrepresentations by Defendants that resulted

9

in harm and eventually death to Mrs. Demouchet, including, but not limited to, the following:

57.

...DEFENDANTS were to provide Mrs. Demouchet services consistent with the mandatory staffing requirements of La. Admin. Code tit. 48 §§ I-9821(A) and I-9823(A) and 42 C.F.R. §§ 483.35, most specifically the right to live in a facility that employs "sufficient nursing staff to provide…services that meet the needs of each resident" as mandated by law,…and DEFENDANTS affirmatively represented to Mrs. Demouchet that they would provide such services.

59.

Before, during, and after the admission process of Mrs. Demouchet, DEFENDANTS actively and intentionally concealed from Mrs. Demouchet that at all times relevant hereto the facility did not employ sufficient "nursing service personnel" to meet the needs of facility residents as mandated by law [La.Admin. Code. tit. 48 § I-9821(A) and 42 C.F.R. §§ 483.25 *et seq.* and 483.35 *et seq*].

60.

Before, during, and after the admission process of Mrs. Demouchet, DEFENDANTS knew that the facility did not have sufficient "nursing service personnel" [as required by La.Admin. Code. tit. 48 § I-9821(A) and 42 C.F.R. §§ 483.25 *et seq.* and 483.35 *et seq.*] to provide required or adequate care and services for the incoming and existing residents and actively concealed this known fact from Mrs. Demouchet.

69.

The representations of DEFENDANTS as incorporated into their admission contract were false and known by the DEFENDANTS to be false when made. Mrs. Demouchet relied on these misrepresentations in becoming a resident of the facility. In reliance of these misrepresentations, Mrs. Demouchet made payments to the DEFENDANTS in return for these services as promised. Mrs. Demouchet suffered pecuniary harm in the form of lost payments and lost services when the DEFENDANTS actually failed to provide these promised skilled nursing services as represented.

74.

Thus, it is alleged at all times relevant hereto, the DEFENDANTS were required to know pursuant to applicable

10

statutes and regulations (or risk forfeiture of licensure) that understaffing the facility created a high risk of harm to residents of the facility, including Mrs. Demouchet. That all times relevant hereto DEFENDANTS consciously disregarded that knowledge and continued to maintain insufficient staffing levels.

79.

The DEFENDANTS deliberate actions detailed herein were in violation of Louisiana law, including without limitation Louisiana Civil Code articles 1953 and 2315, and resulted in damages to Mrs. Demouchet, the full extent of which is not yet known.

Similar to *Riley*, Plaintiffs have alleged Defendants made intentional misrepresentations that NIMS had sufficient staff to care for Mrs. Demouchet's health care needs, despite knowing they could not provide the care that her circumstances necessitated and both state and federal regulations require. Plaintiffs alleged Mrs. Demouchet "justifiably relied upon [Defendants'] misrepresentations in entering into an admission agreement" and becoming a resident of the facility. Again, similar to *Riley*, Plaintiffs alleged their reliance on these misrepresentations resulted in Mrs. Demouchet's injuries and eventual death because Defendants knew they could not provide the appropriate health care and protective and support services to properly care for her. Thus, we find these allegations are sufficient to support a claim that an intentional tort occurred.

We further note that since its release, several federal district courts have relied on our opinion in *Riley* in similar cases involving intentional fraud allegations against nursing homes and their management companies. In *Andrews v. Nexion Health Mgmt., Inc.*, 24-560 (M.D. La. 2025) (unpublished opinion) (2025 WL 634348), the court issued a ruling denying a Rule 12(b)(6) motion to dismiss filed by a nursing home and the same management company (NHMI) as in this case. The plaintiffs in *Andrews* asserted an intentional fraud claim against both the nursing home and the management company, claiming they understaffed and underfunded

11

the nursing home and intentionally misrepresented their compliance with Louisiana nursing home standards and minimum nursing requirements to induce the plaintiffs' father to become a resident. Pertinent here, the federal court denied the defendants' motion to dismiss holding the intentional fraud claim was not subject to the LMMA. Citing *Riley*, the *Andrews* court held that the allegations asserted by the plaintiffs as to intentional misrepresentations made by the defendants to induce their father to become a resident "adequately pled an intentional tort, and the intentional tort claim is not subject to the LMMA[.]" *Id.* at 5.

In *Lunkin on behalf of Blanchard v. Nexion Health Mgmt., Inc.*, 24-673 (M.D. La. 2024) (unpublished opinion) (2024 WL 5317288), the court denied a Rule 12(b)(6) motion to dismiss filed by a nursing home and the same management company (NHMI) as in this case. The plaintiff in *Lunkin* asserted a claim for intentional fraud against the nursing home and management company for knowing misrepresentations made to the plaintiff's mother during the admissions process pertaining to the sufficiency of staffing and care services that would be provided to her as a resident, which defendants knew were false since the facility was understaffed. The plaintiff in *Lunkin*, as in our case, separately initiated the formation of a MRP against the nursing home addressing only her medical malpractice claims as required by the LMMA. Citing *Riley* with approval, the *Lunkin* court found the allegations that defendants "made knowing misrepresentations regarding their compliance with mandatory regulations governing minimum staff, and 'focused on unlawfully increasing . . . earnings' instead of 'ensuring the legally-mandated minimum care' for its residents" were sufficient to set forth an intentional fraud claim. *Id.* at 5.

The same conclusion was reached in *Jones v. Nexion Health Mgmt., Inc.*, 25-146 (M.D. La. 2025) (unpublished opinion) (2025 WL 2797709), where, again, the

plaintiff filed an intentional fraud claim against a nursing home and the same management company as here. In *Jones*, the plaintiff alleged his father's death was the direct result of (1) the defendants' practice of intentionally underfunding and understaffing the nursing home in order to maximize profits; and (2) the defendants' intentional concealment and misrepresentations regarding their services made with the purpose of inducing the father to become a resident of the nursing home, on which he justifiably relied, causing him harm. Defendants moved to dismiss the plaintiff's claims, arguing they were subject to the LMMA and must first proceed to a medical review panel. The *Jones* court, citing our opinion in *Riley* with approval, denied the motion to dismiss finding the plaintiff's allegations did not sound in medical malpractice and, thus, were not subject to the requirements of the LMMA.

Defendants note that, although decisions of federal courts are considered persuasive, they are not binding on Louisiana state courts. *Shell Oil Co. v. Sec'y, Revenue and Taxation*, 96-929 (La. 11/25/96), 683 So.2d 1204; *XXI Oil & Gas, LLC v. Hilcorp Energy Co.*, 16-269 (La.App. 3 Cir. 9/28/16), 206 So.3d 885. However, in this case they are particularly persuasive, as all three rely on this court's opinion in *Riley* for the conclusion reached.

Accordingly, we find the allegations pled by Plaintiffs are sufficient to support a claim that an intentional tort occurred. The trial court erred in sustaining the exception of prematurity in favor of Defendants, NHMI and NIMS, as to Plaintiffs' intentional fraud claim.

***Exception of No Cause of Action as to Plaintiffs' Intentional Fraud Claim***

The trial court also granted Defendants' exception of no cause of action as to Plaintiffs' intentional fraud claim. The exception of no cause of action tests "the legal sufficiency of the petition by determining whether the law affords a remedy" against the defendant to anyone under the factual allegations of the petition.

13

*Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So.2d 1234, 1235 (La.1993). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ.P. art. 931. If the petition alleges sufficient facts to establish a case cognizable in law, an exception of no cause of action must fail. *Allied Chemical Corp. v. Iberville Par. Police Jury*, 426 So.2d 1336 (La.1983).

A petition should not be dismissed for failure to state a cause of action unless it appears beyond doubt that the plaintiff can prove no set of facts in support of any claim which would entitle him to relief. *Fink v. Bryant*, 01-987 (La. 11/28/01), 801 So.2d 346. "The pertinent inquiry is whether, viewed in the light most favorable to the plaintiff, and with every doubt resolved in the plaintiff's favor, the petition states any valid cause of action for relief." *Maw Enter., L.L.C. v. City of Marksville*, 14-90, p. 6 (La. 9/3/14), 149 So.3d 210, 215.

The trial court granted the exception of no cause of action, finding the cases of *Cambre v. Riverlands Home Group, LLC*, 24-218 (La.App. 5 Cir. 8/7/24), 398 So.3d 115, *Satterwhite v. Reilly*, 35,926 (La.App. 2 Cir. 5/8/02), 817 So.2d 407, *writ denied*, 02-1552 (La. 9/30/02), 825 So.2d 1193, and *Cole v. St. Joseph of Harahan, LLC*, 24-148 (La.App. 5 Cir. 8/7/24), 398 So.3d 109, "are controlling and indistinguishable for the intentional tort theories as alleged by the [Plaintiffs]." The trial court found *Cambre* "expressly held that 'plaintiff's [sic] cannot rely on the NHRBR to establish the duty element for a claim to damages under Louisiana Civil Code article 2315, because the scope of the duty established by the legislature does not encompass the recovery of damages based on the value of services provided but not delivered.'" The trial court further found the court in *Cole* held the legislature "has limited the claims under the NHRBR to that of injunctive relief by a pursuing [sic] home resident[,]" and the exclusive remedy under the NHRBR is limited to

14

only injunctive relief, plus attorney fees and costs. Consequently, the trial court found Plaintiff's petition failed to state a viable cause of action for damages.

Here, Plaintiffs alleged in their petition that Defendants made knowing misrepresentations regarding their compliance with mandatory state and federal regulations governing staffing requirements, including but not limited to, the NHRBR. They allege Mrs. Demouchet was provided with both written and oral representations by Defendants that NIMS would provide services in accordance with the mandatory staffing requirements. The petition also alleges Defendants knew it could not meet these requirements since NIMS was understaffed. Plaintiffs argue these intentional, fraudulent actions induced Mrs. Demouchet to become a resident at NIMS and resulted in pecuniary losses through payment of services not rendered, bodily injury, and ultimately death. Therefore, Plaintiffs maintain they have sufficiently alleged a cause of action pursuant to La.Civ.Code arts. 1953 and 1958.

This court in *Riley*, 396 So.3d at 476–77, addressed this exact issue and reasoned as follows:

> The Rileys claim that Cornerstone committed fraud when it made knowing, intentional misrepresentations at the time she was admitted that violated her rights under La.R.S. 40:2010.8(A)(7) of the Nursing Home Residents Bill of Rights (NHRBR). They claim that Cornerstone assured Ms. Riley that there would be sufficient nursing personnel meeting her needs as mandated by federal and state laws and it knew these representations were falsely made because it would not be able to meet her needs since it was understaffed. The Rileys argue that these deliberate fraudulent actions resulted in injury and economic damages pursuant to La.Civ. Code arts. 1953 and 1958, in addition to attorney fees.
>
> Enactment of the NHRBR was not intended to remove medical malpractice claims against qualified health care providers from the LMMA, but was intended to provide nursing home residents with important rights to preserve their dignity and personal integrity. *Richard v. Louisiana Extended Care Ctrs., Inc.*, 02-978 (La. 1/14/03), 835 So.2d 460.
>
> Louisiana Revised Statutes 40:2010.9 provides for the enforcement of the NHRBR.

15

Causes of action for actual monetary damages based upon violations of the NHRBR were statutorily permitted prior to 2003. However, legislative amendments eliminated claims for monetary damages arising from violation of the NHRBR. Private actions for NHRBR violations are limited to claims by nursing home residents for injunctive relief plus attorney's fees and costs.

*Cole v. St. Joseph of Harahan, L.L.C.,* 24-148, p. 6 (La.App. 5 Cir. 8/7/24), [398 So.3d 109, 114].

The court in *Cambre v. Riverlands Home Group, L.L.C.*, 24-218, p. [13] (La.App. 5 Cir. 8/7/24), [398 So.3d 115, 126], also noted that "the NHRBR no longer allows for the recovery of damages when that duty - *i.e.*, to provide certain information to residents regarding its services and to assure that residents receive such services – is breached; the exclusive remedy is injunctive relief." However, the court did recognize that La.Civ.Code art. 2315 could provide a basis for a cause of action for fraud. The court stated that plaintiffs must allege that actual harm was suffered which resulted in actual damages.

In *Randall v. Concordia Nursing Home*, 07-101 (La.App. 3 Cir. 8/22/07), 965 So.2d 559, *writ denied*, 07-2153 (La. 1/7/08), 973 So.2d 726, this court noted that La.R.S. 40:2010.9(B) states that other legal and administrative remedies are still available to the resident. Although decided before the 2003 amendment to La.R.S. 40:2010.9, this court recognized that a resident's intentional tort claim under the NHRBR did not have to be submitted to a medical review panel. *Richard ex rel. Deville v. Louisiana Extended Care Ctrs., Inc.*, 01-1492 (La.App. 3 Cir. 3/6/02), 809 So.2d 1248, *affirmed in part on other grounds*, 02-978 (La. 1/14/03), 835 So.2d 460 (In footnote 2, the supreme court noted that the defendant conceded that the plaintiff's intentional tort claim was not subject to the provisions of the LMMA).

Fraud is defined by La.Civ.Code art. 1953 (emphasis provided) as "a misrepresentation or a suppression of the truth made **with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other**. Fraud may also result from silence or inaction." "Mere silence or inaction without fraudulent intent does not constitute fraud. Fraudulent intent, or the intent to deceive, is a necessary and inherent element of fraud. Fraud cannot be predicated upon mistake or negligence, no matter how gross." *Shekinah Glory Ministries v. One Way Deliverance Ministry*, 22-1170, p. 8 (La.App. 1 Cir. 4/20/23), 366 So.3d 1256, 1261.

Fraud is established by proving three elements: "(1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to another; and (3) the error induced by a fraudulent act must relate to a circumstance substantially influencing the victim's

consent to (a cause of) the contract." *Shelton v. Standard/700 Assocs.*, 01-587, p. 5 (La 10/16/01), 798 So.2d 60, 64; *Robinson-Carter v. St. John the Baptist Parish Sch. Bd.*, 23-397 (La.App. 5 Cir. 4/3/24), 386 So.3d 1163. "Specific intent to deceive is a necessary element of fraud, and fraud cannot be based on mistake or negligence, regardless how great." *Lomont v. Bennett*, 14-2483, p. 19 (La. 6/30/15), 172 So.3d 620, 634, *cert. denied*, 577 U.S. 1139, 136 U.S. 1167 (2016).

This court in *Riley* rejected this same NHRBR argument to identical fraud allegations, finding that the allegations sufficiently state a claim that an intentional tort occurred. We find the same result appropriate here. Plaintiffs herein do not seek damages under the NHRBR, but rather base their fraud claim in tort and contract theory. Plaintiffs maintain they reference the NHRBR because it is one of the statutory requirements applicable to nursing homes that Defendants misrepresented to Mrs. Demouchet would be followed.

Relying in part on our opinion in *Riley,* the federal court in *Lunkin*, 24-673, denied NHMI's argument to dismiss the plaintiff's fraud claim on the grounds it failed to meet the requisite statutory elements to state a cause of action for relief in tort or in contract. The *Lunkin* court noted that both the plaintiff's theories of fraud "rested in the statutory and regulatory obligations" applicable to nursing facilities, including the NHRBR, La.R.S. 40:2010.8(A)(7), La.Admin. Code. tit. 48 § I-9821, and 42 CFR § 483.5. *Id.* at 5. The court in *Lunkin* specifically distinguished *Cambre* and *Cole* as it did not address obligations under 42 CFR § 483.5:

> Defendants' primary argument is that causes of action for violations of the NHRBR are limited to claims for injunctive relief. Indeed, although the NHRBR permitted claims for monetary damages prior to 2003, "legislative amendments eliminated claims for monetary damages arising from violation of the NHRBR." *Cole* [*v. St. Joseph of Harahan, LLC*, 24-148 (La.App. 5 Cir. 8/7/24), 398 So.3d 109]. Now, "[p]rivate actions for NHRBR violations are limited to claims by nursing home residents for injunctive relief plus attorney's fees and costs." *Id.* (citing *Heinrich v. Maison De'Ville Nursing Home of Harvey, LLC*, 21-240 (La.App. 5 Cir. 6/30/21) (unpublished writ disposition); *Knight v. Jefferson Healthcare Center*, 21-736 (La. App. 5 Cir. 2/10/20) (unpublished writ disposition).

Defendants argue that Plaintiff relies only on the NHRBR to establish the duty owed to her. . . . Defendants apparently ignore, however, Plaintiff's reference to 42 CFR § 483.5, an entirely different regulation setting forth mandatory standards for nursing home care. And the two cases relied on by Defendants are distinguishable on this point. In *Cole*, the plaintiff's contractual and tort fraud claims were "inextricably interwoven with violations of the NHRBR," and therefore, the fraud claims for pecuniary damages failed. *Cole*, 2024 WL 3682982 at *3. Likewise, in *Cambre v. Riverlands Home Group, L.L.C.*, 24-218 (La.App. 5 Cir. 8/7/24), [398 So.3d 115, 126], the court held that the plaintiffs could not "rely on the NHRBR to establish the duty element for a claim to damages under La. C.C. art. 2315, because the scope of the duty established by the legislature does not encompass the recovery of damages based on the value of services promised but not delivered."

Neither *Cole* nor *Cambre*, decided by the Fifth Circuit Court of Appeal of Louisiana on the same day, address obligations under 42 CFR § 483.5. A case recently decided by the Third Circuit Court of Appeal of Louisiana does, and the court there found that the plaintiffs had stated claims for tort and contractual fraud where the defendants allegedly misrepresented their compliance with § 483.5. *Riley v. Paramount Healthcare Consultants, LLC*, 2024-127 (La. App. 3 Cir. 10/30/24), [396 So.3d 470]. Here, the Court finds the *Riley* opinion persuasive and will allow Plaintiff's fraud claim in so far as they allege a misrepresentation of compliance with § 483.5.

Defendants next attempt to hang their hat on additional language from the *Cambre* and *Cole* opinions. In *Cambre*, the court added to its dismissal based on NHRBR's remedy limitations and wrote that the plaintiffs had not "set forth sufficient facts to support a claim for damages, based on a percentage of the cost of services *not* provided," because the plaintiffs had not alleged that any resident "suffered *actual* harm attached to *actual* payments made and *actual* services that were not provided." *Cambre*, 2024 WL 3683514, at *7. Likewise, in *Cole*, no plaintiff had alleged that any resident was "actually harmed from inadequate staffing." *Cole*, 2024 WL 3682982 at *3. That is simply not the case here, where Plaintiff has alleged that inadequate staffing led to Blanchard's pressure injury and subsequent hospitalization. Indeed, this allegation forms the basis of Plaintiff[']s administrative negligence claim. For these reasons, because Defendants allegedly promised but did not provide adequate staffing, Plaintiff paid for adequate staffing, and Blanchard was allegedly physically harmed by inadequate staffing, the Court finds that Plaintiff has satisfied the damages elements of her tort and contractual fraud claims.

*Id.* at 4–5.

Similarly, a different federal judge in *Andrews*, 24-560, relying on *Riley* and *Lunkin,* denied an identical motion to dismiss, again filed against the same

management company as here and one of its nursing homes. In that case, the defendants argued the plaintiffs could not assert a claim for damages under the NHRBR because it only allowed for injunctive relief for residents. The plaintiffs countered that they were not seeking damages pursuant to the NHRBR but were only using it to establish the duties owed to residents that Defendants misrepresented they provided and followed. The court in *Andrews* concluded:

> *Lunkin* addressed this issue and rejected Defendants' argument. . . . The Court looked to the plaintiff's citation to 42 C.F.R. § 483.5, which also sets forth regulations regarding mandatory standards in nursing homes. . . . The Court found that the NHRBR bar to damages did not apply because the plaintiff based her claim on the misrepresentation of compliance with 42 C.F.R. § 483.5. The same is true here. Plaintiffs refer to 42 C.F.R. § 483.35, saying that Defendants misrepresented their compliance with this regulation. . . . Therefore, as the Court held in *Lunkin*, Plaintiffs' fraud claim is not foreclosed, "in so far as they allege a misrepresentation of compliance with [§ 483.35]." 2024 WL 5317288, at *5. The *Motion to Dismiss* will be denied on this ground.

*Id*. at 6.

We find a similar result is required here. The trial court erred in finding *Cambre, Satterwhite*, and *Cole* "are controlling and indistinguishable for the intentional tort theories as alleged by [Plaintiffs]." Plaintiffs alleged Defendants promised but did not deliver adequate staffing, Mrs. Demouchet paid for adequate staffing, and she was allegedly harmed by the lack of adequate staffing, pursuant to the analysis set forth in this court's opinion in *Riley*, as well as the federal court opinions in *Lunkin* and *Andrews*, we find Plaintiffs have sufficiently stated a cause of action for intentional fraud. Therefore, the trial court's sustaining of NHMI's and NIMS's exceptions of no cause of action as to Plaintiffs' intentional fraud claim are reversed.

**NHMI's Exception of Prematurity as to Plaintiffs' Administrative Negligence Claim**

The trial court granted NHMI's Exception of Prematurity as to Plaintiffs' administrative negligence claim finding it sounded in medical malpractice and thus fell under the protections of the LMMA. As noted earlier, for the LMMA to apply, (1) the party must be a qualified health care provider and (2) the claim must sound in medical malpractice. *Dupuy*, 187 So.3d 436.

Very recently in *Broden v. Priority Management Group, LLC*, 25-1651 (La. 2/12/26), 427 So.3d 726 (per curiam), the Louisiana Supreme Court addressed whether similar claims for administrative negligence sounded in medical malpractice.[3] In that case, the plaintiffs asserted an administrative negligence claim against a management company alleging it intentionally underfunded a nursing home, which led to understaffing and inadequate care provided to the resident. The plaintiffs argued their claims did not involve healthcare and were therefore not subject to the LMMA. The management company filed a motion for partial summary judgment, contending the allegations fell within the protections afforded by the LMMA. After noting that the management company met its burden of proof to establish it was a qualified health care provider (which the plaintiffs did not dispute), the court focused on whether the plaintiffs' administrative negligence claims constituted medical malpractice within the meaning of the LMMA or were more properly characterized as general negligence.

The *Broden* court found the administrative negligence claims arose directly from health care performed by the management company "specifically, by acts [the management company] took or failed to take during [the resident's] care." *Id*. at 729. Thus, the court found a determination as to whether the duty of care was breached "ultimately turns on the level and adequacy of the health care provided to him." *Id.*

---

[3] We note in *Broden*, only claims for administrative negligence were at issue, not claims for intentional fraud.

Accordingly, the supreme court determined there was no genuine issue of material fact that the administrative negligence claims were medical malpractice claims and fell under the LMMA.

Therefore, under *Broden* we must find Plaintiffs' administrative negligence claims sounded in medical malpractice. However, our inquiry does not end there, as Plaintiffs maintain that NHMI was not a "qualified health care provider" entitled to the protections of the LMMA. "On the exception of prematurity, the exceptor must prove that he is a qualified health care provider if his status is not conceded." *Couvillion v. Matherne*, 15-1762, p. 4 (La.App. 1 Cir. 6/3/16), 196 So.3d 706, 709. During Mrs. Demouchet's stay at NIMS, La.R.S. 40:1231.1(A)(10) defined "health care provider" as follows:

> (10) "Health care provider" means a person, partnership, limited liability partnership, limited liability company, corporation, facility, or institution licensed or certified by this state to provide health care or professional services as a physician, hospital, **nursing home**, . . . or any partnership, limited liability partnership, limited liability company, **management company**, or corporation **whose business is conducted principally by health care providers**, or an officer, employee, partner, member, shareholder, or agent thereof acting in the course and scope of his employment. (Emphasis added).

A qualified health care provider is one that has filed proof of financial responsibility with the Patient's Compensation Fund Oversight Board and has paid the required surcharge. La.R.S. 40:1231.2(A). Proof of qualification is satisfied when the health care provider has introduced a certificate of enrollment into evidence. La.R.S. 40:1231.8(B)(1)(a)(ii).

Pertinent to our inquiry here, the record establishes NHMI did not obtain a PCF certificate until April 1, 2023. Mrs. Demouchet's residency at NIMS began on June 29, 2022, and lasted until May 24, 2023. Thus, NHMI obtained PCF qualification well after the alleged acts of fraud and administrative negligence occurred. The Supreme Court has held the LMMA "does not provide coverage to

21

health care providers who fail to qualify *prior* to the commission of tortious conduct." *Luther v. IOM Co.*, 13-353, p. 9 (La. 10/15/13), 130 So.3d 817, 824, citing *Abate v. Healthcare International, Inc.*, 560 So.2d 812 (La.1990). The appellate court in *Prejean v. Rodrigue*, 23-646, pp. 13–14 (La.App. 1 Cir. 12/27/23), 381 So.3d 98, 107–08, addressed a similar situation where the health care provider's PCF certificate demonstrated an enrollment period that began after the alleged wrongful activity occurred:

> [T]he only "indicated period(s)" on the certificate – November 1, 2021 to November 1, 2022 and July 14, 2021 to November 1, 2021 – are periods *after* the alleged malpractice in this case, which began on August 20, 2020. . . . [The health care provider] may have been a qualified health care provider; however, he failed to submit evidence that he was entitled to the protections under the MMA for the relevant period and failed to carry his burden of proof. Therefore, the trial court erred in sustaining [the] dilatory exception asserting the objection of prematurity.

In *Lunkin*, 24-673, the federal district court denied a motion to dismiss filed by NHMI based on prematurity grounds to similar, if not identical, administrative negligence claims, finding NHMI failed to meet its burden of proving it was certified under the LMMA prior to when the alleged administrative negligence occurred:

> Neither party addresses the impact that Nexion's securing of LMMA protection *during* Blanchard's stay has on Blanchard's claim for administrative negligence. Absent briefing on the subject, for the time being the Court takes recourse in Louisiana's continuing tort doctrine, which distinguishes "injuries resulting from continuous operating causes and those that result from discontinuous operating causes" for purposes of establishing when a statute of limitations begins to run. *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013). Here, whether Nexion's alleged administrative negligence would be a continuing tort is, in part, "a conduct-based [inquiry, with the court] asking whether the tortfeasor perpetuates the injury through overt, persistent, and ongoing acts." *Id*. Here, Plaintiff does state a continuing tort because [the nursing home] was allegedly plagued by underfunding, under-resourcing, and understaffing from the day Blanchard arrived to the end of her stay. . . . Although the continuing tort doctrine is usually employed to toll statutes of limitations, its theoretical underpinnings apply in this context as well. A continuing tort protects a plaintiff from the statute of limitations barring their claim when the limitations period begins during the tort. Here, the continuing

tort doctrine protects Plaintiff from the procedural requirements of the LMMA, which only can be invoked by Nexion for part of the tortious period. For this reason, the Court finds that **the LMMA does not protect Nexion from Plaintiff's claim against it for a tort that began before Nexion was certified under the LMMA**. *See Sewell*, 600 So.2d at 578 ("[T]he coverage of the [LMMA] should be strictly construed.")

*Id*. at 3 (emphasis added).

Shortly after *Lunkin*, the federal district court in *Andrews*, 24-650, denied NHMI's motion to dismiss similar administrative negligence claims on prematurity grounds, holding:

Nexion Management attached a copy of its certification of enrollment as a certified healthcare provider, but it only shows enrollment for the period between June 1, 2023, and June 1, 2024. . . . Mr. Rice's stay at Meadowview began in February 2020 and ended in July 2023. Plaintiffs pled that throughout his time at Meadowview, Mr. Rice suffered because of the intentional underfunding, which led to understaffing. . . . This well pled allegation, taken as true for the purposes of the *Motion to Dismiss*, establishes that the administrative negligence of Nexion Management was a continuing tort. The injury was perpetuated "through overt, persistent, and ongoing acts[,]" which Plaintiffs sufficiently allege. *Lunkin*, 2024 WL 5317288, at *3 (quoting *Young v. United States*, 727 F.3d 444, 447 (5th Cir. 2013)) (internal quotation marks omitted).

Because the tort began when Mr. Rice began his stay at Meadowview in February 2020—or at least when he returned to Meadowview in June 2022—*part of the tort occurred when Nexion Management was not a qualified healthcare provider.* Nexion Management had the burden to show that it was a qualified healthcare provider during the relevant period, and it has failed to do so. *Prejean v. Rodrigue*, 23-646 (La. App. 1 Cir. 12/27/23), 381 So.3d 98, 107 ("As the party filing the exception, the burden was on [the defendant] to prove prematurity and initial immunity from suit as a qualified health care provider under the [L]MMA."). As this Court held in *Lunkin*, *Plaintiffs are protected from the procedural bar requiring a medical review panel, because the tort began when Nexion Management was not a qualified healthcare provider and did not fall under the LMMA. Lunkin*, 2024 WL 5317288, at *3. The Court need not address the rest of Nexion Management's arguments that the claim is premature, since they rely on Nexion Management's status as a qualified healthcare provider. The *Motion to Dismiss* will be denied as to Plaintiffs' administrative negligence claim.

*Id.* at 3–4 (emphasis added).

As we noted earlier, NHMI obtained a PCF certificate which showed an enrollment period beginning on April 1, 2023. Mrs. Demouchet's residency at NIMS began on June 29, 2022, 276 days before NHMI obtained its PCF certificate. Thus, under the jurisprudence set forth above, the LMMA does not protect NHMI from Plaintiffs' administrative negligence claims that allegedly occurred before NHMI was certified under the LMMA.[4] Therefore, the trial court erred in granting NHMI's exception of prematurity as to Plaintiffs' administrative negligence claims.

### Exception of No Cause of Action as to Plaintiffs' Administrative Negligence Claim

In its written reasons for judgment, the trial court held that Plaintiffs' citation of regulations from the CFR and the Louisiana Administrative Code were not sufficient to supply the "duty" element of their claim for "administrative negligence" under Louisiana tort law. The trial court also found Plaintiffs failed to set forth sufficient facts to support a claim for actual damages suffered.

As Plaintiffs note, "Louisiana unquestionably recognizes claims for corporate or administrative negligence in the health care facility context." *Rhodes v. Aurora Cares LLC*, 20-319, p. 9 (W.D. La. 2021) (unpublished opinion) (2021 WL 649797), citing *Scio v. Univ. Med. Ctr. Mgmt. Corp.*, 19-1319 (La. 10/21/19), 280 So.3d 1135. The *Rhodes* case, as here, involved alleged understaffing of a nursing home. The plaintiff filed suit against the management company asserting administrative negligence for its underfunding and understaffing of the nursing home. The management company filed a motion to dismiss for failure to state a claim. The court

---

[4] NHMI argued in brief that it should be considered a qualified health care provider based on the fact that its agent, in this case Kevin Doerr, was a qualified health care provider. We find this unpersuasive as there would be no need for a management company to ever obtain a PCF certificate if it could simply rely on its employees to be considered a qualified health care provider. The fact that La.R.S. 40:1231.1(A)(10), in defining a "health care provider," specifically lists management companies, places it in the group that must then be certified by the PCF to be a "**qualified** health care provider" under the LMMA. The fact that NHMI did indeed seek to obtain a PCF certificate indicates its acknowledgment that this was a necessary requirement to become a qualified health care provider entitled to the protections of the LMMA. Therefore, we find this argument unpersuasive.

24

denied the motion and held the plaintiff adequately stated a claim for negligence against the management company:

> Here, Plaintiff has stated a claim for negligence against Aurora Cares. First, Plaintiff alleges that Aurora Cares had management authority over Bernice and thus had a duty to Plaintiff under both statute and regulation to ensure adequate staffing and funding for the facility. . . . Nursing facilities are required to maintain certain minimum levels of staffing and services pursuant to state and federal statute and regulation. *See, e.g.,* 42 U.S.C. § 1396r(b)(4)(A); 42 C.F.R § 483. Plaintiff contends that Aurora Cares tightly controlled decisions about staffing, budgeting, and operations at the corporate level, and therefore owed a duty to Plaintiff by virtue of its relationship with Bernice. . . . Second, Plaintiff adequately alleges that Aurora Cares' conduct fell below the standard of care because he claims Aurora Cares provided residents with nursing hours below the national average and had inadequate staff and/or funding to see to Plaintiff's custodial needs. . . . Third, Plaintiff alleges that this understaffing and underfunding was the cause in fact of his injuries, including his weight loss decubitus ulcers, and other injuries. Fourth, if, as Plaintiff alleges, Aurora Cares was the entity responsible under statute and/or regulation at the corporate level for making staffing, operations, and budgeting decisions, then it follows that their dereliction of those duties were also the legal cause of Plaintiff's injuries because Plaintiff is within the scope of people the statute and regulations are designed to protect. Finally, plaintiff alleges injury because he states that he was hospitalized for malnutrition and decubitus ulcers due to the dereliction of care he experienced because of Aurora Cares' decisions. . . . Thus, Plaintiff has adequately stated a claim for negligence against Aurora Cares.

*Rhodes*, at p. 9.

Contrary to NHMI's contention, Plaintiffs maintain they are not relying on state and federal regulations to confer a "private right of action" but instead assert their administrative negligence claims under La.Civ.Code art. 2315. The jurisprudence has recognized that federal regulations and statutes can be utilized in a duty-risk analysis to determine if duties and obligations under Louisiana law have been violated. Likewise, the fourth circuit has explained:

> These regulations, promulgated by the federal Department of Transportation, do not create any private right of action for damages. Any claim for damages in this case arises under Louisiana tort law. However, **public safety regulations such as these**, issued by an agency presumed to have expertise in the relevant subject matter and statutorily-charged with protecting public safety, **are very useful in**

**determining the standard of care applicable in a negligence action (i.e. defining the "duty" that is owed by someone**).

*In re New Orleans Train Car Leakage Fire Litig.*, 00-479, p. 49 (La.App. 4 Cir. 6/27/01), 795 So.2d 364, 395 (emphasis added), *writ denied*, 01-2493 (La. 10/14/02), 827 So.2d 411, *cert. denied*, *Nova Chems., Inc. v. Adams*, 538 U.S. 944, 123 S.Ct. 1623 (2003) (emphasis added).

Further, the appellate court in *Claborne v. Hous. Auth. of New Orleans*, 14-1050, p. 21 (La.App. 4 Cir. 4/15/15), 165 So.3d 268, 286, specifically recognized that public safety regulations (in that case 24 CFR § 5.703(f)) may be "utilized in determining whether defendants violated their duties and obligations under Louisiana law." Thus, we find the trial court erred in concluding that "the regulations from the Code of Federal Regulation (CFR), the Louisiana Administrative Code, and the U.S. Code do not supply the 'duty' element of their claim for 'administrative negligence' under Louisiana tort law for administrative negligence in the health care setting."

Based on the well-pled allegations in Plaintiffs' petition, we find Plaintiffs have stated a claim for negligence under Louisiana tort law. If the petition alleges sufficient facts to establish a case cognizable in law, an exception of no cause of action must fail. *Allied Chem. Corp. v. Iberville Parish Police Jury*, 426 So.2d 1336 (La.1983). Therefore, we find the trial court erred in sustaining the exception of no cause of action as to Plaintiffs' administrative negligence claim.

*Defendants' Answer to the Appeal*

In light of our reversal of the trial court's judgment, Defendants' answer to the appeal seeking the dismissal of Plaintiffs' claims to be ordered with prejudice is rendered moot.

**DECREE**

26

For the foregoing reasons, we reverse the sustaining of the exception of prematurity and the exception of no cause of action in favor of NIMS as to Plaintiffs' intentional fraud claims. We also reverse the sustaining of the exceptions of prematurity and the exceptions of no cause of action in favor of NHMI as to Plaintiffs' intentional fraud claims and administrative negligence claims. We remand this case to the trial court for further proceedings consistent with this opinion. All costs of this appeal are assessed to Defendants, New Iberia Manor South and Nexion Health Management, Inc.

**REVERSED AND REMANDED.**